## The Central Railroad *vs.* DeBray, and *vice versa.*

1. Though one may be a train-hand in the employment of a railroad, if he is injured without fault on his part by the negligence and carelessness of other agents of the company, he may recover.

(*a.*) Where a conductor in charge of a train ordered a train-hand under him to step from the cars while in motion, in order to couple cars standing on a side track to the main body of the train, coupling being a part of his business, the obeying of such order will not prevent a recovery by him for an injury, if he used all reasonable care and skill in so doing.

2. The defendant filed no plea to the jurisdiction of the court, and no issue was therefore made as to the venue. Were it otherwise, the testimony showed that the injury was done at Barnesville, near the depot; and this court will take judicial cognizance of the fact that Barnesville is in Pike county.

3. There was no error in rejecting the testimony of a witness that "any person with ordinary care could have gotten off over the skids where plaintiff did, without being hurt." This was a conclusion which the jury might find, but was not for the witness to state.

4. It was proper to reject the testimony of witnesses that if one obeys the order of a conductor and gets off a moving train "he does it at his own risk." Witnesses must testify to facts; the court will give the law.

5. The seventh ground of the motion is covered by the third head-note above.

6. Where a witness testified that he did not know what the rules of the company were, but proposed to state that formerly he was an officer of the company, and that no conductor or other officer had the right to order an employé to get on or off a moving train, and that if such order were given, the employé would not be required to obey it, such testimony was properly rejected.

7. It is not matter for expert testimony to show that no railroad employé is required to get on and off a train while in motion; that neither the conductor nor any other officer can require an employé to get on and off a moving train, and that if such order is given, the employé is not required to obey it.

(*a.*) Whether or not the conductor had the right to give the order or the plaintiff was required to obey it, the former did give the order and the latter obeyed it. Under the facts, the act of the conductor was that of the corporation, and the latter cannot escape responsibility on account of its own wrong.

(*b.*) Whether it be the fault of an employé to obey an order of his superior, depends upon whether it would be rash and dangerous to do so, and where there was no apparent danger in so doing, it would not be fault on his part.

8. The opinion of a witness as to matters of fact is not admissible in evidence.

9. Where plaintiff, a man of twenty-three years of age, was greatly wounded and bruised, suffering great pain for a long time, and being compelled to have his right hand amputated above the wrist, a verdict of $4,700 was not only not excessive, but was quite moderate.

10. The verdict was not contrary to the charge of the court containing the law of the case.

11. Where a principle of law has been given in the general charge as favorably to the excepting party as it could expect, a failure to give the principle when embodied in a subsequent request will not work a new trial.

(*a.*) Opinion of Jackson, J., in 63 *Ga.*, 181, adopted and approved.

12. The court is not bound to give a request in charge when the same point has been covered by his charge, nor should he give in charge a request not warranted by the facts in the case.

13. The nineteenth ground is covered by the ruling on the eighteenth ground.

14. There was no error in refusing to charge that "if to do the freight business it was necessary to use a pair of short 'skids' for the hauling of freight, and it was necessary for the proper handling of freight to keep the ' skids ' between the main and side tracks, and the 'skids' were kept for such purpose in a usual and customary place, the plaintiff cannot recover." If the injury resulted from the carelessness and negligence of defendant's agents in leaving these "skids" on the roadway, it could make no difference whether such negligence had become usual or customary.

15. There was no error in refusing to charge that, if among different modes of performing his duty, some of which were safe, plaintiff chose one which was less safe, he took the risk of his choice, and could not recover; and in charging instead, that this was a circumstance for the jury to consider with the other facts in deciding whether the plaintiff was at fault or not. The question of fault or negligence was for the jury alone, and was fairly submitted to them.

16. The twenty-second ground is covered by the fourteenth headnote.

17. There was no error in charging that if "skids" or planks were placed on or near the track of defendant's road when the injury occurred, and they occasioned the injury to plaintiff while in obedience to orders, and without fault or negligence on his part, the company would be liable.

18. The charge embraced in the twenty-fourth ground was right, as already held.

19. If the plaintiff has shown the defendant to have been negligent,

to defeat a recovery, it must be shown that he was likewise negligent or at fault.

20. So when plaintiff has shown injury to himself, without fault on his part, it would be incumbent on defendant to show that the injury did not result from the want of ordinary and reasonable care and diligence on the part of its servants and agents.

21. The charge complained of in the twenty-seventh ground was warranted by the evidence.

22. As no special damages were found by the jury, and as the verdict is such as to warrant the conclusion that no such damages entered into the same, the defendant was not hurt by a charge on that subject.

23. The charge as a whole is unexceptionable, and the parts excepted to, when taken in connection with the whole, constitute no grounds of error.

24. The judgment being sustained, the cross-bill of exceptions is dismissed.

November 6, 1883.

Railroads. Damages. Negligence. Master an_ Servant. Venue. Witness. Evidence. Charge of Court. Before Judge BRANHAM. Pike Superior Court. October Term, 1882.

DeBray brought suit against the Central Railroad on account of an injury which happened to him while employed by defendant as an extra train-hand. The facts are sufficiently stated in the first division of the decision. The jury found for the plaintiff $4,700.00. Defendant moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the evidence failed to make out the case of the plaintiff as alleged in his declaration.

(3.) Because the court ruled out a portion of the answer of W. A. Tinsley to the third direct interrogatory, as follows: "And any person with ordinary care could have gotten off over the skids where plaintiff did without being hurt."

(4.) Because the court ruled out a portion of the answer of W. A. Tinsley to the eleventh cross-interrogatory, as

follows: [The witness testified that it was usual for a brakeman to jump off a moving train to couple cars, when told to couple, and then added the sentence ruled out]— "but he does it at his own risk and the risk of his life."

(5.) Because the court ruled out a portion of an answer of R. Schmidt to a cross–interrogatory, as follows: "He does so at his own risk," [that is, gets off a moving train, if so ordered by the conductor.]

(6.) Because the court ruled out a portion of an answer of R. Schmidt to a cross-interrogatory, as follows: "A person using ordinary care can pass over them (referring to skids lying between the track) with perfect safety. It is true that a person can, with ordinary care, get off or on a moving train passing over such skids with perfect safety. It is habitually done."

(7.) Because the court erred in ruling and deciding as follows: A. J. White, a witness for defendant, stated that he was president of the Macon & Western railroad for about nine years, commencing in 1865, and while he was president he made and had printed about one-third of the rule-book that was put in evidence by the plaintiff, the balance of the book being made since he went out of office (which rule-book plaintiff proved by R. Schmidt was in force at the time plaintiff was injured). This rule-book does not contain all of the orders and instructions that are given to employés, but certain general rules for their guidance. Defendant then proposed to prove by White that no conductor or other officer had the right to order an employé to get off or on a moving train, and if such order was given, the employé could not be required to obey it.—The court ruled that, as the witness did not know what the rules were at the time of the accident, and proposed to testify what they were at the time he was in office, he could not do so, and rejected the evidence.

(8.) Because the court erred in ruling and deciding as follows: Defendant proved by A. J. White that he was an expert in all the departments of railroading, and then pro_

posed to prove by him that no employé was required to get off or on a moving train, and that neither the conductor nor any other person could require him to do so, and if such order were given, the employé would not be required to obey it.—This proposed proof was rejected by the court.

(9.) Because the court erred in ruling and holding as follows: A. J. White testified that the lantern plaintiff used was furnished him that he might see how to perform his duties with safety to himself; that he knew the character of the lantern. Defendant then offered to prove by the same witness that a person in getting off a train could, by the light of the lantern, readily see any object near the track; which proposed proof the court rejected.

(10.) Because the verdict is excessive, it being for an amount much larger than the plaintiff would be entitled to recover under the evidence.

(11.) Because the verdict is contrary to the following charge of the court: "If you believe from the evidence that plaintiff got off the car in a careless manner that was calculated to throw him to the ground, and if the manner of getting off contributed to his fall, he cannot recover."

(12.) Because the verdict is contrary to the following charge of the court: "If you believe from the evidence that plaintiff could have remained on the train until it was stopped, and if you believe he got off while the train was in motion, and if you believe that such act was at his own risk, then he cannot recover."

(13.) Because the verdict is contrary to the charge of the court: "If you believe from the evidence that the plaintiff knew the cab on which he was would stop near where he had to do his work, and if you believe plaintiff could have got off at such a place with perfect safety, and if you believe plaintiff got off before the cab reached that place, and while the car was in motion, and if you believe from the evidence that plaintiff took the risk of getting off the moving train, then he cannot recover, no

matter how you construe the direction given the plaintiff by the conductor."

(14.) Because the verdict is contrary to the following charge of the court: "If you believe from the evidence that the manner of getting off the train contributed in any way to his injury, then plaintiff cannot recover."

(15.) Because the verdict is contrary to the following charge of the court: "If you believe from the evidence that plaintiff was furnished with a lantern for the purpose of enabling him to perform his duties; that it was his duty to use the care of a prudent man in trying to discover whether or not there were obstructions near the track, and if you believe from the evidence that the plaintiff, by a prudent use of his lantern, could have discovered and avoided the obstructions, and if he failed to use his lantern with the care of a prudent man, then he cannot recover."

(16.) Because the court refused to charge the following request: "If plaintiff contributed, either immediately or remotely, directly or indirectly, to his injury, then he cannot recover, regardless of the position of the skids or any other negligence of defendant's agents."

(17.) Because the court refused the following request: "And although you may believe that the plaintiff was directed by the conductor to get off at the place where he left the car, while the car was in motion, he cannot plead the order of the conductor as an excuse for the act, if the act was one attended with danger and the doing the act put him in fault. The order of a superior could not pro-: tect him."

(18.) Because the court refused the following request "It would be the duty of an employé connected with the running of a freight train to know what tools, implements, or appliances are used in conducting the business of handling freights, and where such tools, implements or appliances are kept; if kept at any particular place, or at or about any particular locality, and if plaintiff was a train-hand on defendant's train, and if the defendant had

kept short skids for their use and kept them at or near a certain place, it was the duty of the plaintiff to look for them, and he would be charged with a knowledge of their presence at such a place."

(19.) Because the court refused to charge the following request: " If to do the freight business it was necessary to keep a pair of short skids for the use of the hands employed to handle the freight, and if it was necessary for the proper handling of freight to keep the skids between the main and side tracks, then if the skids were kept for such purpose and in a usual and customary place, plaintiff cannot recover."

(20.) Because the court refused to charge as follows: " If, among different modes of performing his duty, some of which were safe, the plaintiff chose one less safe or more dangerous, he took the risk of his choice, although other servants did likewise; and if you so believe, plaintiff cannot recover."   But the court modified the request as follows: " If among different modes of performing his duty, some of which were safe, the plaintiff chose one less safe or more dangerous, then you will take this circumstance into consideration with all the other facts in the case, in deciding whether the plaintiff was at fault or not. It is for you to determine from the evidence whether plaintiff took the risk in getting off."

(21.) Because the court refused to instruct the jury as follows: "If you believe from the evidence that skids were kept between the main and side tracks before and at the time plaintiff was employed by the defendant, and if you believe they were necessary in order to perform the work of discharging or receiving freight, then plaintiff assumed the risk of the premises as he found them."

(22.) Because the court instructed the jury as follows: " If you believe from the evidence that skids or planks were placed on or near the track of defendant's road where the injury complained of occurred, and that such planks or skids occasioned said injury to the plaintiff while per-

forming his duties in obedience to orders and without fault or neglect on his part, then I charge you the defendant would be liable."

(23.) Because the court charged as follows: "If the conductor directed the plaintiff to get off the train while it was in motion, and he got off while in the performance of his duty as he was directed to do, then the defendant is estopped to deny the plaintiff's right to get off, and cannot set up as a part of his defence the claim that plaintiff was not bound to obey the conductor's orders."

(24.) Because the court charged as follows: "If it appears from the plaintiff's evidence that defendant was negligent, the *onus* is on the defendant to show that the plaintiff is also at fault, in order to defeat a recovery."

(25.) Because the court charged as follows: "If the plaintiff has shown that he was not at fault, then the defendant must show that the injury did not result from the want of ordinary and reasonable care on the part of his servants and agents."

(26.) Because the court charged as follows: "If the exercise of ordinary care and diligence required the defendant's agents and servants to place the skids, after using them, on the platform or some other place than the point where they were left, and if the defendant's agents and servants neglected to do so, and left the skids on the ground between the tracks at the point where the plaintiff got off, and if this was not the usual and also a proper place to leave the skids, or if they were placed in an unusual or negligent position there, then the plaintiff, if he was injured by reason thereof and was without fault, would be entitled to recover;"—there being no evidence to warrant such charge.

(27.) Because the court charged as follows: "Special damages are such as actually flow from the act, and must be proved in order to be recovered, such as the surgeon's or doctor's bills, the cost of nursing and medicines;"—there being no testimony to warrant such charge.

The motion was overruled, and defendant excepted.

. The body of the charge given by the court, omitting instructions as to the measure of damages, the form of the . verdict, etc., was as follows :

"The plaintiff brings his action on the case, laying his damages at forty thousand dollars, and says that on the 11th of September, 1880, defendant was running its train over the railroad in this county, and that he was employed by the defendant thereon as a train-hand, and that the defendant, in consideration of his employment, was bound to protect him against injury arising from the carelessness, neglect or improper conduct of its other employés, and from all defects in its road; that plaintiff, while engaged on the train on the day named, as a train-hand under J. O. Waller, the conductor thereon, and when he had reached Barnesville, was ordered by Waller to get off the train with him and couple certain cars, then on the side-track at said station, to the train, when the train was run back on the side-track. That when the order was given and when he stepped off, the train was running slowly, and he could have stepped off with safety, if the railroad had been then and there unobstructed. That it was then 11 o'clock at night, and the darkness was so great he could not see any obstruction then and there on the road. That he stepped off as ordered, expecting to plant his foot on level ground, but instead thereof, struck a pair of skids, three by ten inches wide and nine feet long, placed one upon the other, which the defendant carelessly and negligently permitted to be left upon its roadside, when the skids ought to have been on the platform at the depot, and when it was the duty of the defendant to have kept the road free from obstructions. That the skids turned and threw him, without his fault, under the rear car of the train. That he was permanently injured thereby. That his arm was cut off, and had to be amputated a second time to save his life; and that he suffered great pain, and still suffers by reason of the injury; and that his health is impaired thereby. That he was a young man twenty-three years old, a machinist, capable of making a hundred dollars a month; that his ability to labor has been greatly diminished; and that he has been compelled to expend large sums of money for surgical and medical treatment and nursing. To this action the defendant files the general issue, which is a general denial of the plaintiff's cause of action, and makes the issue which you are to try. The defendant also claims that the plaintiff's duty did not make him get off a moving train. That he was not bound to obey the conductor, when ordered to get off the train while it was in motion, and if he did get off, he did so at his own risk. (2.) That he got off at an improper place, in an improper manner and in an unskillful way, and in such a way as to be thrown by the impetus given his body by the motion of the cars. (3.) That skids were at their

accustomed and proper place, in between the side-track and the main track, lengthwise the road, opposite the side-door of the depot. (4.) That he was provided with a lantern, and by a proper and reasonable use of it could have seen how to get off, and could have gotten off safely, and that he negligently used his lantern. (5.) That plaintiff did not fall on the skids, and that plaintiff was injured by his own fault, and not by defendant's negligence. That plaintiff's fault contributed to the injury; and that, for these reasons, plaintiff cannot recover. The plaintiff replies that he was not at fault, and that his fault did not contribute to the injury, but that his injury was the result of defendant's negligence. This is the question for you to try. I will first give you in charge some requests made by counsel for plaintiff and defendant. (The court then charged, at request of plaintiff): It is the duty of railroad companies in this state to keep their tracks clear of objects and structures which unnecessarily expose to danger their employés in the execution of their duties, and if, in consequence of neglect of that duty, an employé, who is without fault, is injured, the company would be liable for the injury. If you believe from the evidence that skids or planks were placed on or near the track of defendant's road where the injury complained of occurred, and that said planks or skids occasioned said injury to the plaintiff while performing his duty in obedience to orders, and without fault or neglect on his part, then I charge you the defendant would be liable to the plaintiff, without an order from the conductor, was in the usual discharge of his customary duties, and was injured without fault or negligence, and he was free from fault, and was injured by the fault or negligence of the company or his co-employés, then he may recover. (This closes plaintiff's requests.)

(The court then charged, at the request of defendant:) "If you believe from the evidence that the plaintiff got off the car in a careless manner that was calculated to throw him to the ground, and if the manner of getting off caused him his fall, he cannot recover. If you believe from the evidence that the plaintiff got off the train while in motion, and was hurt, and if you believe that such an act was one not required by the railroad company, but if it was an act in which the plaintiff took the risk of his act, then he cannot recover. If you believe from the evidence that plaintiff could have remained on the train until it was stopped, and if you believe from the evidence that he got off while the train was in motion, and if you believe from the evidence that such an act was at his own risk, then he cannot recover. If you believe from the evidence that plaintiff knew that the car on which he was would stop near where he was to perform his work, and if at such place he could have gotten from the car with safety, and if plaintiff got off before the train reached that point, and while the train was in motion, and if you believe from the evidence that plaintiff took the risk of getting off the moving train, then he cannot re-

cover, no matter how you may construe the directions given the plaintiff by the conductor. In determining whether the plaintiff was directed by the conductor to get off at the place where he did, you will look to the evidence to see where the plaintiff's work was to be performed that the conductor required of him, and to all the evidence touching the order given him by the conductor, and in this way determine whether the directions given him by the conductor merely indicated to him where he was to work, or if it was an order to him to get off at that place where he left the car.

"The law is that railroad companies shall not keep unnecessary obstacles on or near the track. This does not mean that the track must be kept absolutely clear of every obstacle, but simply that no unnecessary obstacles shall be left on or near the track. In determining whether the keeping of skids between the main and side-tracks was reasonable or unreasonable obstructions, you should look to the necessity for keeping them at that place, and the length of time the practice had been to keep them at that place, and whether or not they had ever proved to be unnecessary obstructions, and from all the facts say whether the keeping of the skids between the main and side-tracks was an unreasonable obstruction. If you believe from the evidence that the manner of plaintiff's getting off the train contributed in any way to his injury, then plaintiff cannot recover. If among different modes of performing his duty, some of which were safe, the plaintiff chose one less safe or more dangerous, then you will take this circumstance into consideration with all the other facts in the case, in deciding whether the plaintiff was at fault or not. It is for you to determine from the evidence whether the plaintiff took the risk of getting off. If you believe from the evidence that the railroad company employed a surgeon of good reputation to treat the wound of the plaintiff, then the defendant is not liable for unskillful surgery, nor could the unskillful surgery increase the claim of plaintiff for damages against the railroad company. If you believe from the evidence that plaintiff refused to have his hand amputated until gangrene had set in, and if you believe from the evidence that such a delay revented a proper amputation at first, and produced the necessity for a second amputation, then the railroad company could not be held liable for the pain and suffering of such second amputation. If you believe from the evidence that plaintiff was furnished with a lantern for the purpose of enabling him to perform his duties, then it was his duty to use the care of a prudent man in trying to discover whether or not there were obstructions on the track. And if you believe from the evidence that plaintiff, by a prudent use of his lantern, could have discovered and avoided the obstructions, and failed to use his lantern with the care of a prudent man, then he cannot recover. (This closes defendant's requests.)

If the plaintiff is shown to have been injured by defendant's cars, and if he was at that time an employé of defendant, engaged with

others on running and operating the train, and the injury was occasioned thereby, then in order to make a *prima facie* case against defendant, the plaintiff must show one of two things, either that the defendant was negligent or that he was without fault. If it appears from the plaintiff's evidence that defendant was negligent, then the *onus* is on defendant to show that the plaintiff was also at fault, in order to defeat a recovery. If the plaintiff has shown that he was not at fault, then the defendant must show that the injury did not result from a want of ordinary and reasonable care and diligence on the part of its servants and agents. An employé of a railroad company cannot maintain an action for a personal injury, unless he himself is free from fault. Any substantial fault, however slight, which contributes to the injury for which he sues will defeat his action. To recover, he must be blameless. If the exercise of ordinary and reasonable care and diligence required the defendant's agents and servants to place the skids, after using them, on the platform of the depot, or at some other place than the point at which they were left, and if the defendant's servants and agents neglected to do so, and left the skids on the ground between the tracks at the point where the plaintiff got off, and if this was not the usual place and also a proper place to leave the skids, or if they were placed in an unusual and negligent position there, then the plaintiff, if he was injured by reason thereof, and was without fault, would be entitled to recover.

"You will determine from the evidence whether the plaintiff was subject to the conductor's orders, and bound to obey them, or not, and also what order the conductor gave, if any; whether it was to get off the train while the train was in motion or after the cars had stopped. If the conductor directed the plaintiff to get off the train while it was in motion, and he got off in performance of his duty, as he was directed to do, then the defendant is estopped to deny the plaintiff's right to get off, and cannot set up as a part of its defence the claim that the plaintiff was not bound to obey the conductor's orders. And if in getting off the train, if he so got off while it was in motion, in obedience to orders, without fault on his part, he fell against the skids and was injured thereby, and if the skids were improperly and negligently placed at that point by defendant's agents or servants, then the plaintiff would be entitled to recover. But if the plaintiff was at fault in getting off the cars while in motion, when he ought not to have done so, or was negligent in getting off in an improper or unsafe manner, or if in not using his lantern with proper or reasonable care, or in any other way, and his fault or negligence contributed at all to his own injury, then he cannot recover. Unless the plaintiff was free from fault, he cannot recover, even though defendant's agents may have been negligent. But if he was free from fault, and the negligence of defendant's agents caused the injury, he would be entitled to recover. The court cannot express or intimate an opinion as to what was or what has not been proved. Negligence is a question for

the jury. And you are to decide whether it was the duty of defendant's servants and agents to have placed the skids, after using them, on the depot platform or at some other point than that at which they were left, and in what position they were left, and whether the defendant was negligent in leaving the skids on the ground at the point where the plaintiff got off, if they were left there, or in any other way, and whether this or any other act of the defendant's servants or agents was the cause of the plaintiff's injury, or whether it resulted from plaintiff's own fault, in getting off the train when he ought not to have done so, or in getting off in an improper or unsafe manner, or in not using his lantern with practical and reasonable care, and whether his own fault contributed in any way to his own injury."

A. R. LAWTON; JOHN I. HALL; J. J. HUNT, for the Central Railroad.

HARRISON & PEEPLES; J. F. REDDING, contra.

BLANDFORD, Justice.

The defendant in error brought his action on the case against the plaintiff in error in the superior court of Pike county, for injuries which he alleges he sustained by reason of the carelessness and negligence of defendant's servants.

The jury found a verdict in favor of the plaintiff, and assessed his damages at forty-seven hundred dollars. The defendant moved for a new trial upon many grounds of error alleged in the motion. The court overruled this motion, and refused the new trial prayed for, and defendant excepted, and assigns as error this judgment of the court refusing this motion for a new trial, and prosecutes this writ of error to have that judgment of the court below reviewed and reversed.

1. The first two grounds of the motion are that the verdict is contrary to the law, and is contrary to evidence, and without evidence to support it, and they will be considered together.

The evidence shows that the plaintiff was employed as a special or extra train, hand to run on defendant's cars at night from Atlanta to Macon; that his business was to put on and off brakes, to couple and uncouple cars; that

this particular train was on that night engaged in making up a train by picking up such cars along the route as were to be carried to Macon; that when the train was approaching Barnesville, and near there, while the train was moving at the speed of from four to six miles per hour, the plaintiff was directed by the conductor to get off of the train with him and go to the side track near the depot at Barnesville, on which several cars were placed, for the purpose of coupling them to the running train, when it should be backed for that purpose; that plaintiff used the lamp which he had, and got from the train carefully, but in alighting, his feet came in contact with two pieces of timber which were lying crosswise on the roadway of defendant; these timbers were known as "skids" which were used by defendant's agents in loading and unloading freight from their cars. The timber on which his feet rested upon alighting from the train, turned and threw him against the running train, whereby he was greatly hurt, bruised, and his right hand became so badly mashed and mangled that the same had to be amputated above the wrist, and that a second amputation became necessary of the bone of the arm; that his pain and suffering was very great. It also appeared that the conductor had preceded plaintiff, and had got off of the train in safety. That this accident and injury to the plaintiff was wholly due to the skids or pieces of timber being left on defendant's roadway, there can be no doubt; and the court left it fairly to the jury to say, from the evidence submitted to them, whether the defendant, in leaving this timber upon its roadway, was negligent or not. The jury found that the defendant was negligent in so leaving this timber upon its roadway, and we are satisfied with this finding.

But it is insisted that the plaintiff was not bound to obey the orders of the conductor to get off of the train before the same had ceased running. The conductor acted for the defendant corporation; he had charge and command of the train, and it was not the fault of plaintiff in obeying this order, and defendant cannot set up the wrong-

ful act of itself or agents to excuse itself from liability to one who merely obeys an order of this sort.

That the plaintiff used all reasonable care and skill in getting from the train, is made apparent from the evidence of the plaintiff. So where one, though he be a train-hand and in the employ of a railroad company, is injured without fault on his part, by the negligence and carelessness of other agents of the company, he is entitled to recover damages for injuries thus received by him. The first two grounds of the motion were properly overruled by the court below. 63 *Ga.*, 179.

2. The third ground of the motion is that the evidence submitted to the jury did not make out the case of the plaintiff as alleged in his declaration.

It is insisted, upon the part of the plaintiff in error, that the proof did not show that the injury complained of was done in the county of Pike, the venue of his action.

It is a sufficient reply to this ground in the motion to say that the record shows that defendant filed no plea to the jurisdiction of the court. Without this, there was no issue of this kind made in the court below. If such plea had been filed, the testimony had upon the trial shows the injury had been sustained by plaintiff at Barnesville, near the depot, and this court will take judicial notice that the city of·Barnesville is in the county of Pike.

3. The fourth ground of error complained of in the motion is that the court ruled out a portion of the answer of W. A. Tinsley, as follows: " And any person with ordinary care could have gotten off over where plaintiff did without being hurt." · The evidence of the witness ruled out was but a conclusion, and it was for the jury to find this conclusion, and not the witness. There was no error in rejecting this testimony. 36 Barb., 201 ; 36 Iowa, 36, 473; 78 Ill., 32 ; 121 Mass., 446.

4. The fifth and sixth grounds of the motion will be considered together. The court refused to allow W. A. Tinsley and R. Schmidt to testify that if one obeys the

order of a conductor and gets off of a moving train, " he does it at his own risk."

To allow testimony of this kind, would be to allow a witness to testify what the law is. Witnesses must testify to facts, and the court is responsible for the law. There was no error committed upon these grounds. 8 Allen, 441.

5. The seventh ground is covered by the ruling on the fourth ground above. See authorities cited thereunder.

6. The eighth ground is that defendant proposed to prove by one A. J. White that no conductor or other officer had the right to order an employé to get off or on a moving train, and if such orders were given, the employé would not be required to obey the order. This testimony was rejected by the court, upon the ground that it appeared from the testimony of this witness that he did not know what the rules of the company were at the time of the accident, and proposed to prove what they were when he was an officer.

This ruling of the court was obviously correct upon the ground he put it, but it appears that this testimony was irrelevant and immaterial. *Wylly et al., ex'rs, vs. Gazan,* 69 *Ga.,* 506.

7. The 9th ground is, that the court refused to permit A. J. White to testify that he was an expert in all departments of railroading; that no employé is required to get off or on a train when it is moving; that neither the conductor nor any other officer can require an employé to get off or on a moving train ; and if such order is given, the employé is not required to obey it.

How such testimony as this can be admissible, even by an expert, is not perceptible to this court. It is sufficient to say, whether or not the conductor had the right to give an order to plaintiff to get off of the train, when in motion, he did give such order, and whether plaintiff was required to obey it or not, he did so obey the order, and the defendant can not now take advantage of its own wrong, and thereby escape the responsibility for its own wrong act, committed

by one who was acting for it to such an extent, under the circumstances, as to make the act of the conductor the act of the corporation.   Whether it be the fault of an employé to obey an order of his superior, depends upon whether it would be rash and dangerous to do so; and where there was no apparent danger so to do, it would not be fault on nis part.   The case of the *Western & Atlantic Railroad Company vs. Wilson* covers this ground, and is decisive of it.   36 Barb., 201; Code, §3868.*

8. The 10th ground of the motion is close kin to the ninth ground, and other grounds before considered, and is mere matter of opinion of the witness, which the court did right to reject.   45 Iowa, 247.

9. The 11th ground of the motion is, "that the verdict is excessive," but why is not stated in the motion.   A slight review of the testimony brings prominently forth the facts that plaintiff had lost his right hand above the wrist; that he was otherwise greatly wounded and bruised; that he suffered great pain for a long time; the most useful member of his body was gone; that he is a young man just twenty-three years of age · has to go through life maimed, "shorn of his fair proportions," with an imagination that he is whole, but with a reality that he is broken,—suffering continual pain, prospects in life blighted.   Excessive damages are such damages as shock the moral sense to such an extent as to lead to the belief that the jury were actuated by undue or improper motives or influences, and such does not appear in this case.   The damages assessed by the jury in this case are not only not excessive, but are quite moderate.   Code, §§2947, 3067; 24 *Ga.*, 366; 10 *Ib.*, 37; 30 *Ib.*, 146.

10. The 12th, 13th, 14th, 15th and 16th grounds in the motion are that the verdict of the jury is contrary to cer tain charges of the court therein set forth.   These several grounds are covered by what has been said as to the first

---

* Wilson's case is at present term; See also Reporter, v .1. 13, No. 14., p. 438.

and second grounds in the motion. The verdict is not contrary to the law.

11. The 17th ground is that the court erred in refusing to charge the jury: "If plaintiff contributed, either immediately or remotely, directly or indirectly, to his injury, then he cannot recover, regardless of the skids or any other negligence of defendant's agents."

This point had been given in charge to the jury by the court before the request was made, quite as favorably to the defendant as it had a right to expect, and the same appears in the 12th, 13th, 14th, 15th and 16th grounds of the motion before referred to; besides, we are not prepared to go the length embraced in this request, but we adopt the opinion of Jackson, J., in *Central Railroad vs. Mitchell*, 63 *Ga.*, 181. "If the damage was caused by another employé and was not caused by the fault or negligence of the employé hurt, then he may recover." 56 *Ga.*, 196, 645. This request is in the language of the judge who delivered the opinion of the court in *Central Railroad vs. Mitchell*, which was but argument to show that if fault was attributable to an employé it must be such as contributed to the injury; substantial fault.

12. The 18th ground complains that the court should have instructed the jury that if the plaintiff was directed by the conductor to get off at the place where he left the car, while the car was in motion, he cannot plead the order of the conductor as an excuse for the act; if the act was one attended with danger, and the doing of the act put him in fault, the order of the superior could not protect him.

The court had charged, as embraced in the 14th ground of the motion, as fully on this point as he was required to do, and it was not error to refuse to further charge as requested in this ground; besides, this request assumes that the order of the conductor was unlawful and that the plaintiff knew it, neither of which appears by the evidence in this case. The court is not bound to give a re-

quest in charge to the jury, when the same point has already been covered by his charge; nor is he bound, nor should he charge a jury upon a request not warranted by the facts of the case. 56 *Ga.*, 196; 37 Mich., 485.

13. The 19th ground of error is covered by what has already been said in reference to the 18th ground. 42 Wis., 583; 29 Iowa, 14.

14. The 20th ground of error is as to the refusal of the court to instruct the jury, " If to do the freight business it was necessary to use a pair of short skids for the handling of freight, and it was necessary for the proper handling of freight to keep the skids between the main and side tracks, and the skids were kept for such purpose in a usual and customary place, plaintiff cannot recover." The court did right to refuse this request, and this charge is liable to the objection urged to the charge in the 18th ground, besides the case before referred to, *Central Railroad vs. Mitchell*, 63 *Ga.*, 181, sustains the court. If this injury resulted from the carelessness and negligence of defendant's agents in leaving these skids on the roadway, it could make no difference whether such negligence had become usual or customary. This point was fully covered by the general charge.

15. The 21st ground of error is that the court erred in refusing to charge, " If among different modes of performing his duties, some of which were safe, plaintiff chose one less safe or more dangerous, he took the risk of his choice, although other servants did likewise; if you so believe, the plaintiff could not recover;" but the court modified the request as follows: "If among many different modes of performing his duties, some of which were safe, the plaintiff chose one less safe or more dangerous, then you will take this circumstance into consideration, with all the other facts of the case, in deciding whether the plaintiff was at fault or not; it is for you to determine from the evidence whether the plaintiff took the risk or not." The question of fault or negligence on the part of

the plaintiff or defendant was for the jury alone, and the question was submitted fairly to them by the court, and there was no error in refusing to charge as requested and giving the charge complained of. Southern Law Review, vol. 5, p. 831.

16. The 22d ground of error is substantially the same as the one embraced in the 20th ground, and the (same) remarks are applicable to this latter ground as have been applied to the 20th ground.

17. The 23d ground is that the court erred in charging the jury, "If you believe from the evidence that skids or planks were placed on or near the track of defendant's road, where the injury complained of occurred, and said planks or skids occasioned said injury to plaintiff, while performing his duties in obedience to orders, and without fault or negligence on his part, then I charge you that the defendant would be liable." This charge was the law of this case, when taken in connection with the general charge, where it is left to the jury to find whether the leaving the skids on the defendant's road-way was negligence or not, as will be seen by reference to the case above referred to—63 *Ga.*, 173—and is fully covered by that case.

18. The charge embraced in the 24th ground of complaint is right, as has already been held. 37 Mich., 205.

19. There is no error in the 25th ground; it would seem to be axiomatic that if plaintiff has shown defendant to have been negligent, that to defeat plaintiff, it must be shown that he was likewise negligent or at fault. 56 *Ga.*, 586; 58 *Ib.*, 107, 485.

20. And likewise as to the 26th ground. When plaintiff has shown injury to himself, without fault on his part, it would be incumbent on defendant to show that the injury did not result from the want of ordinary and reasonable care and diligence on the part of its servants and agents. 56 *Ga.*, 586; 58 *Ib.*, 107, 485.

21. The 27th ground complains of a part of the charge

as being unwarranted from the evidence in the case. We think that this charge is warranted from the evidence, as will be shown from an examination of the same.

22. The 28th ground of error complains of the charge of the court upon the subject of special damages. As there were no special damages found by the jury, and as the verdict is such as to warrant the conclusion that no such damages entered into the same, the defendant is not hurt thereby.

23. The entire charge of the court is set out in this record, and is fair, and contains a full exposition of the law, as applicable to every theory of this case, and will always be read as one whole view of the law, and exceptions to a part of it will be considered in the light of all other parts. And the charge as a whole is entirely unexceptionable, and the parts excepted to, when taken in connection with the whole charge, constitute no grounds of error.

See also *Central Railroad vs. Mitchell*, 63 *Ga.*, 180; 37 Ohio, 669; 81 Ill., 109; *Atlanta Cotton Factory vs. Speer*, 69 *Ga.*, 137; 51 *Ga.*, 582; Thomp. on Negligence, vol. 2, 985; 8 Allen, 441; Pierce Am. Rwy. L., 377; Reporter, No. 12, vol. 13, p. 383; 45 Wis., 477; 42 *Ib.*, 583; Am. Rwy. Reports, vol. 18, 58.

Upon the whole, we see no error in the several exceptions taken by plaintiff in error in this case. And we conclude this opinion in the language used in case of *Central Railroad vs. Mitchell:* "The charge is lucid, able, impartial, and without fault; and the judgment overruling the motion for new trial must be affirmed."

24. It is ordered that the cross-bill of exceptions filed in this case, together with the writ of error thereon be dismissed.

Judgment in main case affirmed; cross-bill of exceptions dismissed.